## GOLDBERG v. CHAS. C. KOONES & CO.
### No. 794.

Municipal Court of Appeals for the
District of Columbia.

May 19, 1949.

Sidney D. Goldberg, appellant, pro se.

Harry A. Calevas, Washington, D. C.,
for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Plaintiff, a tenant in an apartment house,
sued his landlord in the Small Claims
Branch of the trial court for violation of
the minimum service standard applicable to
the leased premises, claiming the statutory
damages of $50 provided by the District of
Columbia Emergency Rent Act.[1] This
Court granted an appeal from a judgment
in favor of the landlord.[2]

The facts were in the main undisputed.
Sewage backed into the toilet bowl and
bathtub in the tenant's apartment, over-
flowing on to the bathroom floor. The
resident manager was notified and the jani-
tor attempted without success to remedy
the situation. The landlord was notified
but its representative stated he could not
send a plumber that his hands were tied.
He explained this at trial by stating that
the owner of the building had given in-
structions that he would handle all repairs.
The tenant called a plumber who, after

[1] Code 1940, Supp. VI, 45—1610.　　[2] Code 1940, Supp. VI, 11—772.

arriving at the apartment, called the landlord's representative and asked for authority to make the repairs. This request was refused. The plumber then dislodged from the stack pipe an object which had caused the stoppage. For this the tenant paid the plumber $8.75.

■ The trial court denied recovery on the ground that the owner of the building had not been called upon to make the repairs and accordingly had not refused to make them. The Act imposes liability when the landlord "refuses to render services."[3] The trial court obviously misinterpreted the relationship of the parties. The owner of the building was not the landlord. The tenant's lease was with defendant. Apparently defendant was agent for the owner but such agency was not disclosed in the lease. Defendant described itself as the landlord and executed the lease in its own name. The tenant could not deny his landlord's title and under these circumstances the defendant could not deny that it was the landlord.

■■ Defendant being the landlord and having refused to make the repairs was liable if such refusal constituted a refusal to render services required by the applicable minimum service standard. A representative of the Administrator of Rent Control testified that a rent ceiling for the apartment had been approved and that the minimum services specified in the order included gas, electricity, heat, hot water, and refrigeration, but made no reference to repairs. We do not think that the failure of the order to include repairs to the plumbing system in the minimum services necessarily excluded such repairs from the required services. The landlord of an apartment house is required by law to maintain and keep in reasonable repair those parts of the apartment under his control such as common stairways and central plumbing, heating and electrical systems. Gladden v. Walker & Dunlop, Inc., D.C. Cir., 168 F.2d 321. Where the law imposes a duty on the landlord we think such duties are included in the minimum services even though not specified in the Administrator's

order. It was the duty of the landlord to keep the central sewage system in operating condition and this duty was a part of the minimum services.

■ It is argued that it is not the duty of a landlord to make repairs necessitated by fault of the tenant and that the only testimony regarding the cause of the stoppage—that of the plumber—was that the stoppage could have been caused either by a foreign object falling into the open stack pipe above the roof or by such object being dropped into the toilet bowl in the tenant's apartment; and that if the latter was the cause the tenant had no right to demand that the landlord make the repair. While the plumber could only conjecture as to the origin of the object causing the stoppage, his testimony was positive and uncontradicted that the stoppage was in the stack pipe just below the point where the drain from tenant's apartment entered, and that he dislodged it by means of a long rod inserted in the open end of the stack pipe above the roof. It is therefore clear that the stoppage, whatever its cause, was in the stack pipe, a part of the central system beyond the confines of tenant's apartment. A tenant is under no duty and generally has no right to attempt to repair those parts of a central system outside his own apartment. The stack pipe was under the landlord's control and it was the landlord's duty to remove the stoppage.

It is not necessary to determine what would be the effect on the tenant's right of recovery if there had been proof that the stoppage was due to his fault, because there was no such proof. The plumber's testimony that the stoppage could have come from the open stack pipe or from the tenant's apartment did not constitute proof it came from tenant's apartment. Testimony equally consistent with two conflicting hypotheses tends to prove neither.

Our conclusion is that on the evidence and findings plaintiff was entitled to a judgment.

Judgment for defendant reversed with instructions to enter judgment for plaintiff for $50.

---

[3] Code 1940, Supp. VI, 45—1610(a).