235 A.2d 88.

SHULTON, INC. *vs.* APEX, INCORPORATED.
SHULTON, INC. *vs.* ANN & HOPE FACTORY OUTLET INC. *et al.*

NOVEMBER 15, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. The defendants, operators of large retail establishments, appeal from a superior court summary judgment enjoining them from knowingly and wilfully advertising, offering for sale and selling any products bearing the plaintiff's trademarks at less than the minimum prices stipulated in the fair-trade contracts which the plaintiff had duly entered into with other retailers doing business in this state.

Heretofore one of these defendants unsuccessfully challenged the constitutionality of our Fair Trade Act, G. L. 1956, chap. 12 of title 6, as applied to nonsigners of price maintenance contracts. *United States Time Corp.* v. *Ann & Hope Factory Outlet, Inc.,* 98 R. I. 503, 205 A.2d 125. In this case defendants do not challenge the act nor do they deny that they knowingly and wilfully sold plaintiff's fair-traded products at less than their minimum stipulated resale prices. Instead, they assert that plaintiff, by reason of having incorporated a so-called 3 per cent provision in its fair-trade contract, has waived the right either to compel them to abide by the price restrictions or to recover

damages for their noncompliance. The 3 per cent provision permits a retailer selling plaintiff's commodities, to allow its customers a concession from the minimum stipulated resale prices "* * * in the form of a cash discount, trading stamps, cash register receipts or other device, provided that such concession shall be extended to all sales by the 'Retailer' (excepting tobacco products and alcoholic beverages) and further provided that the amount or value of such concession shall not exceed three per cent of the said minimum retail prices."

The defendants recognize, as of course they must, that the issuance of redeemable trading stamps or other similar devices by a merchant to his customers is presently an accepted practice in retail merchandising. They argue, however, that giving such concessions, even though a commonly accepted practice, is price cutting in disguise, and that plaintiff, by its consent as embodied in the 3 per cent clause, has thereby waived the enforcement rights which the act would otherwise make available. The question, however, is not whether plaintiff has authorized an indirect means by which some retailers may elect to evade price restrictions, but whether plaintiff, by including the 3 per cent clause, has thereby forfeited its enforcement rights under the statute. The answer to that question turns on how we read our statute.

Some fair trade acts specifically forbid the giving of redeemable trading stamps, or coupons, or other like devices on a fair-traded product if the price paid by the customer, less the redemption value of the received trading stamps, results in a sale price which is below the stipulated minimum. Our statute contains no such prohibition nor does it specifically provide, as do some acts, that giving such concessions, if authorized by a fair-trade contract is per-

missible.[1] It provides only that a fair-traded commodity may not be resold "* * * at less than the minimum price stipulated by the vendor." Section 6-12-3.

That language, rather than being self-declaratory or susceptible to but a single meaning, is instead obscure and open to interpretation. In searching for its meaning, we seek to ascertain the legislative intent from a consideration of the legislation read in its entirety and viewed in the light of the purposes which motivated its enactment. *Mason* v. *Bowerman Bros., Inc.*, 95 R. I. 425, 187 A.2d 772; *Kmiec* v. *Liquor Control Hearing Bd.*, 87 R. I. 257, 140 A.2d 133. Construing similar language in its Fair Trade Act, the New Hampshire court found that the underlying legislative aim was to eliminate cutthroat competition and in *Corning Glass Works* v. *Max Dichter Co.*, 102 N. H. 505, 513, 161 A.2d 569, 575, said:

> "* * * we do not believe our Legislature intended that the giving of stamps, gifts, cash discounts, or the extension of credit should cause those who do so to forfeit their rights under the Law. In practical effect, the giving of stamps comes to no more than a normal cash discount, which has never been regarded as an unfair practice any more than the extension of credit, but merely as a common custom of trade. The practices permitted by the plaintiff here may be equated to the offering of free delivery or free parking. We cannot conceive that the Legislature considered these practices as cut-throat competition at which the Law was aimed."

Our agreement with the New Hampshire court as to the intended scope and purpose of fair-trade legislation affords ample reason for following *Shulton, Inc.* v. *Hoque & Knott, Inc.*, 364 F.2d 765. In that case, and it is the only case di-

---

[1] A chart tabulating the acts in the various states as to those which do and those which do not prohibit the offering or making of concessions of any kind by redeemable trading stamps or otherwise is found at 2 C.C.H. Trade Regulation Reporter, ¶6047, pp. 9093-4.

rectly in point, the contractual provisions as well as the statute, were both substantially the same as those in issue here. In holding that the contract qualified for enforcement under the Tennessee Fair Trade Act, notwithstanding that it permitted a sliding scale of prices down to 3 per cent below the list price, the court said at 767:

> "It is our view that given the total context and purpose of the Tennessee Act, a prohibition against selling at less than a fixed price does no violence to the statutory language permitting contracts which prohibit resale 'except at the price stipulated by the vendor.'"

*Jantzen Inc.* v. *E. J. Korvette, Inc.*, 219 F. Supp. 604 (S.D.N.Y.), relied on by defendants, is clearly distinguishable. There, the contractual provision neither fixed a limitation on the amount of the concession which the retailer might offer his customers on fair-traded products, nor did it require that a similar concession be extended by the retailer on all of its other sales.

We likewise find no merit in defendants' further argument that the contract permits a combination or tie-in sale and is therefore unenforceable. The basis for that argument lies in the provision which permits concessions in the form not only of cash discounts, trading stamps, or cash register receipts, but also of *other devices*. The inclusion of *other devices*, the argument goes, allows retailers to tie-in or to combine a sale of a Shulton fair-traded commodity with some other merchandise, as for example, a package of razor blades free with every bottle of its fair-traded Old Spice shaving lotion. Such a construction, although novel, disregards both the plain sense of the contract, as well as the rule of construction that general words used in connection with and following an enumeration of particulars will, in the absence of a contrary intent, be confined to things ejusdem generis, that is, of the same general nature or use as those specifically enumerated. *Newport Water Works* v.

*Taylor,* 34 R. I. 478, 83 A. 833; *Railton* v. *Taylor,* 20 R. I. 279, 38 A. 980.

The summary judgment appealed from is affirmed.

*Factor, Chernick & Hillman, William C. Hillman,* for plaintiff.

*Abedon & Abedon, Bernard B. Abedon, Herbert J. Abedon,* for defendants.