### WARDMAN v. HANLON (two cases).

(Court of Appeals of District of Columbia.  Submitted April 3, 1922.  Decided May 1, 1922.)

#### Nos. 3711, 3712.

1. **Husband and wife** ⊜⟹229(2)—**Declarations for injuries to tenant's wife held to state action ex delicto, and not ex contractu.**

Declarations alleging that defendant had leased an apartment to plaintiff husband, whereby defendant agreed to give plaintiffs the use of the apartment, and that it then became the duty of defendant to furnish to plaintiffs the use of the bathroom properly equipped with running water of proper temperature, which he failed to do, resulting in injury to the plaintiff wife, states a cause of action ex delicto, not ex contractu, the allegation of lease being merely by way of inducement to establisn the status from which the alleged duty arose, and defendant cannot claim the action was contractual, especially where he pleaded not guilty, which was the proper plea in an action of tort, but not in an action on contract.

2. **Husband and wife** ⊜⟹209(2)—**Action in tort may be maintained by tenant's wife.**

Regardless of whether the wife of a tenant can maintain an action for breach of the landlord's covenant, she can maintain an action in tort for breach of the landlord's duty arising from the status created by the lease.

3. **Landlord and tenant** ⊜⟹162—**Landlord of apartment building owes duty to keep portions for common use reasonably safe.**

Where the control of the entire structure has not passed into the tenant's hands, but the landlord retains exclusive control over a part of the building for the common use of the tenants, the law places on the landlord an implied duty to use reasonable care to keep the parts retained under his control in a reasonably safe condition.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Landlord and tenant ⊜⇒162, 169(4)—Furnishing scalding water in toilet tank supports inference of landlord's negligence.**

   The landlord of an apartment building, who had exclusive control of the supply of water to the building and of the pipes through which it was conveyed to the bathroom in plaintiffs' apartment, owed the tenant's family the duty to exert reasonable care to prevent steam and scalding water from entering the toilet tank, and the fact that the tenant's wife was injured by scalding water in the tank supports an inference that the landlord failed to perform that duty.

5. **Evidence ⊜⇒460(5)—Parol evidence is admissible to prove leased premises include a bathroom.**

   Where the written lease to plaintiffs covered a numbered apartment in a designated building, without stating what the apartment comprised, parol evidence was admissible to show that it included a bathroom.

6. **Landlord and tenant ⊜⇒169(11)—Proof of proper construction of plumbing does not entitle landlord, sued for negligent operation, to a directed verdict.**

   Where the declaration for injuries to a tenant's wife charged negligent operation of the water supply system, whereby hot water entered the toilet tank, proof by the landlord that the plumbing system was properly constructed and was not negligently maintained did not entitle the landlord to a directed verdict.

7. **Landlord and tenant ⊜⇒169(4)—Res ipsa loquitur does not make landlord insurer or compel inference of negligence.**

   The doctrine of res ipsa loquitur merely permits an inference of the landlord's negligence from the fact that scalding water and steam entered a toilet tank, and it does not compel such inference, nor make the landlord an insurer of the safety of his tenants.

8. **Landlord and tenant ⊜⇒164(1)—Rule landlord does not warrant condition does not exempt from liability for negligent operation.**

   The rule that there is no implied warranty by a lessor that the leased premises are safe and fit for occupation does not defeat the landlord's liability for injuries to a tenant, caused by negligent operation of the plumbing system which was under his control.

9. **Trial ⊜⇒260(1)—Requested charges covered by general charge were properly refused.**

   Charges requested by defendant were properly refused, where, in so far as they stated the law correctly and were applicable to the case, they repeated what was said by the court in its general charge.

Appeal from the Supreme Court of the District of Columbia.

Separate actions by Mary A. T. Hanlon and by J. Leo Hanlon against Harry Wardman, to recover damages for personal injuries to the plaintiff in the first action. Judgment for the plaintiffs in each action, and defendant appeals. Affirmed.

Dan Thew Wright and Philip Ershler, both of Washington, D. C., for appellant.

D. W. O'Donoghue and A. A. Alexander, both of Washington, D. C., for appellees.

SMYTH, Chief Justice. These cases were submitted on the same record. Mary A. T. Hanlon, plaintiff in the first case, is the wife of the appellee, plaintiff in the second one. She averred in her declaration that the defendant, at the time of the accident which forms the basis of the action, was in the control of, and operating, an apartment house in Washington; that she was then in the lawful possession and

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

occupancy of an apartment therein, under a lease from the defendant to her husband, for the use of himself and family; that the apartment included a bathroom, equipped with the usual toilet facilities; that the defendant negligently and carelessly allowed the flush tank connected with the toilet in the bathroom, and pipes leading to it, to become filled with superheated water and steam; that while she was using the toilet she opened a valve for the purpose of admitting water to flush the bowl, and thereupon a stream of scalding water and steam was thrown against her bare body at that place where the limbs join the trunk, causing severe burns, from which she suffered great pain and agony. Her husband, alleging substantially the same facts, sued for the expense which he was put to in providing her with medical and surgical attention, and servants, and for loss of her society and consortium.

To each declaration the defendant filed a plea of not guilty. The evidence was without substantial conflict, but there was a dispute as to the inference to be drawn from it. Verdicts were returned in favor of the plaintiffs, upon which judgments were entered. Appellant brings the cases to this court asking for a new trial.

[1] He alleges many errors, but groups them under five captions. He argues that the action is ex contractu and not ex delicto, and says the plaintiffs were not entitled to recover, because they were not able to show that any particular provision of the written contract was violated. He did not so construe plaintiffs' declarations when he filed his pleas, for, instead of presenting the pleas appropriate in an action on contract, he pleaded not guilty, which was proper in an action for tort. It is true the declarations aver a lease, but only for the purpose of establishing the status of the parties from which flowed the duties later alleged. The allegations with respect to the contract are made by way of inducement to the general cause of action, and not as the foundation of it. In an early case this language occurs:

"The subjects proper for action on the case are of two distinct classes. First, where there is a tort * * * entirely unconnected with any contract. Secondly, when there is a contract, either express or implied, from which a common law duty results, an action on the case lies for a breach of that duty; in which case the contract is laid as mere inducement, and the tort arising from the breach of duty as the gravamen of the action." Emigh v. Railroad Co., 4 Biss. 114, Fed. Cas. No. 4,449.

In accord with these views is the opinion of the learned Judge Hammond in Whittenton Manufacturing Co. v. Memphis & Ohio R. P. Co. (C. C.) 21 Fed. 896, where he refers to many authorities.

The declarations say that the plaintiffs were in possession of the apartment at the time of the accident under a letting whereby the defendant had agreed to give to them the use of the apartment, which included a bathroom and toilet facilities. Stress is laid upon the word "whereby," and it is urged that it indicates that whatever rights the plaintiffs had were contractual. But this is not all the declarations allege on the point. Following immediately the part just mentioned they say:

"And it then and there became and was the duty of the defendant to furnish to the plaintiff's husband and his family * * * the use of said bath-

room, suitably and properly equipped with running water," of a proper temperature, for flushing the bowl, etc.

In other words, having set forth the relation of the parties as established by the lease, they then aver the duties which the common law attaches to the relation.

[2] Cases which rule that a declaration must proceed upon some definite theory are quite beside the question with which we are dealing. The doctrine they announce is not in dispute here. Nor is it correct to say that this case turns on whether or not a lessee of premises or his wife may recover for personal injuries due to the lessor's failure to keep a covenant. Plaintiffs, as we have said, did not sue for breach of a covenant but for breach of a common-law duty arising out of the contract of tenancy. Many decisions are found in appellant's brief to the effect that the wife of a tenant cannot maintain a tort action against the landlord for injuries, where the action is based on a violation of the landlord's agreement to repair. The reason assigned is that there is no privity of contract between the landlord and the tenant's family. But we repeat: This action is not bottomed on contract, and hence the doctrine of those cases is inapposite.

[3] There is a wide distinction between cases where the landlord retains exclusive control over a particular part of the building and those where the control of the entire structure has passed completely out of him and into the possession of the tenant. O'Hanlon v. Grubb, 38 App. D. C. 251, 257, 37 L. R. A. (N. S.) 1213. Cases pointing out this distinction are Iowa Apartment House Co. v. Herschel, 36 App. D. C. 457, 465, Ann. Cas. 1912C, 206; Security Savings & Commercial Bank v. Sullivan, 49 App. D. C. 119, 261 Fed. 461; Squire, Vandervoort & Co. v. Ryerson, 150 Ill. App. 255, 261; Shoninger Co. v. Mann, 219 Ill. 242, 76 N. E. 354, 3 L. R. A. (N. S.) 1097; Doyle v. Franck, 82 Neb. 606, 118 N. W. 468. He who has no power of control over an agency which causes an injury is not liable for the consequence of its careless management. The rule is quite different, however, where he has the exclusive power of control, as the defendant had here. In such a case he is liable for what happens through his neglect.

Thus in the Shoninger Case, supra, 219 Ill. 245, 76 N. E. 355, 3 L. R. A. (N. S.) 1097, where the suit was for damages resulting to the plaintiff in consequence of having fallen down an unguarded elevator shaft in a building, the landlord being in exclusive control of the elevator, the court said that the law was well settled—

"that a landlord who rents different parts of a building to various tenants and retains control of the stairways, passageways, hallways, or other methods of approach to the several portions of the building for the common use of the tenants, has resting upon him an implied duty to use reasonable care to keep such places in a reasonably safe condition, and that he is liable for injuries which result to persons lawfully in the building from a failure to perform such duty."

This states the law correctly, and by a parity of reasoning is as applicable to the landlord who retains exclusive control of the supply of water for toilet purposes as to one who has control of the things mentioned in the quotation.

[4] A prayer to instruct the jury that there was not sufficient evidence of negligence on the part of the defendant was properly refused. It was admitted that the supplying of the water, the pipes through which it was conveyed to the bathroom, and its temperature were under the exclusive control of the defendant. Clearly, he owed to the tenant and each member of his family the duty to exert reasonable care to prevent steam or scalding water from going through the pipes, for by furnishing the water he in effect represented that it would be suitable for the purpose intended, so far as proper care on his part could make it. The accident and the circumstances under which it transpired were sufficient to support, although they did not compel, the verdicts of the jury that he had violated his duty. They gave "ground for a reasonable inference that, if due care had been employed, * * * the thing that happened amiss would not have happened." In such a case the law says "res ipsa loquitur." Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; Robertson v. Washington Railway & Electric Co., —— App. D. C. ——, 279 Fed. 180.

[5] Is there a variance between the declarations and the proof? Appellant points to the averment in the declarations that the landlord agreed to furnish to the tenant a bathroom and toilet facilities, and says there is no provision in the written lease whereby he expressly undertook to supply those things. Nor is there anything in it defining what an apartment comprises. The apartment is identified by a number, and what it embraces may be shown by parol. Speaking of a like lease, this court said:

"Parol testimony may be introduced when it is apparent that the written instrument does not express the whole agreement of the parties." O'Hanlon v. Grubb, 38 App. D. C. 251, 256 (37 L. R. A. [N. S.] 1213).

And it is so apparent here; in consequence, there is no variance.

[6] Appellant asked the court to charge the jury to return a verdict for defendant on the ground that the evidence showed that the plumbing system in the building was properly constructed and was not negligently maintained, which it refused to do. Even if the jury found these things, it would not justify a verdict for defendant, because it would not tend to show that the system had been carefully operated, and failure to so operate it was the basis of plaintiffs' case. As we have already shown, the circumstances under which the accident occurred were sufficient to support a conclusion of negligence. It follows that the request was properly refused.

[7] Exception is taken to the instruction of the court applying the doctrine of res ipsa loquitur to the case. We have already pointed out that this is a proper case for its application, but we add, in response to what is said in appellant's brief, that this doctrine does not require that negligence must be inferred from the mere happening of an accident. Nor does it make the landlord a surety for the safety of the premises without reference to the terms of the lease, nor eliminate the necessity of notice in a proper case. This must be manifest from the above discussion of the subject.

[8] There is no claim that there was a defect in the water system, but it is averred, and correctly, the jury found, that it was negligently and carelessly managed by the defendant, who was in exclusive control. Cases to the effect that there is no implied authority by a lessor that the leased premises are in good condition or are safe and fit for occupation have no tendency to illustrate any of the questions involved here.

[9] Finally, the appellant states without argument that there is an error in the failure of the court to give certain other instructions requested by him. We have examined them, and, so far as they state the law correctly and are applicable to the case, we find they repeat what was said by the court in its general charge, and hence the requests were properly refused. Finney v. District of Columbia, 47 App. D. C. 48; Sinclair v. United States, 49 App. D. C. 351, 265 Fed. 991; Smith v. United States, 50 App. D. C. 208, 269 Fed. 860; Henry v. United States, 50 App. D. C. 366, 273 Fed. 330.

Finding no error, we affirm the judgments, with costs.

Affirmed.